# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LA PALOMA GENERATING | ) | Case No. 16-12700 (JTD) |
| COMPANY, LLC, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| _____Debtors._____ | ) | |
| LNV Corporation, | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 19-50110 (JTD) |
| | ) | |
| AD HOC GROUP OF SECOND LIEN | ) | |
| CREDITORS; SOLUS SENIOR | ) | |
| HIGH INCOME FUND LP; and | ) | |
| SOLUS ALTERNATIVE ASSET | ) | |
| MANAGEMENT LP, | ) | |
| | ) | |
| Defendants and | ) | |
| _____Counterclaim Plaintiffs._____ | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff and counterclaim defendant LNV Corporation ("LNV") moved to dismiss the sole counterclaim (the "Counterclaim") asserted by defendants Solus Senior High Income Fund LP, Solus Alternative Asset Management LP, and the Ad Hoc Group of Second Lien Creditors (collectively "Solus")[1] in their Answer to the First Amended Adversary Complaint and Counterclaim [Adv. D.I. 25]. The Counterclaim alleges that LNV breached the covenant of good faith and fair dealing in connection with an

---

[1] The Ad Hoc Group was originally comprised of 6 entities. On June 6, 2019, Plaintiff entered into a settlement agreement with each member other than Solus, leaving Solus as the only remaining defendant. [Adv. D.I. 21, ¶¶ 10, 11].

Intercreditor Agreement ("ICA") governing the relationship between LNV as First Lien Lender and Solus as Second Lien Lenders to the Debtors.[2]  LNV's Motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7012. [Adv. D.I. 27]. For the reasons stated below, the Motion is granted, and the Counterclaim is dismissed with prejudice.

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## STANDARD OF REVIEW

"The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will be dismissed if after accepting all well-pled facts as true and resolving all inferences in favor of the plaintiff, the court finds no entitlement to relief. *Id.* (citing *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009)). However, a court need not accept as true assertions that are contradicted by matters of public record or matters of which a court may take judicial notice, such as previous court proceedings. *Southern Cross Overseas Agencies, Inc. v. Wah*

---

[2] Capitalized terms not defined have the meaning ascribed to them in the Motion to Dismiss.

*Kwong Shipping Group Ltd.*, 181 F.3d 401, 426-27 (3d Cir. 1999); *Gupta v. Wipro Limited*, 749
Fed. Appx. 94, 97 (3d Cir. 2018).

## BACKGROUND[3]

LNV and Solus (among others) provided prepetition financing to the Debtors for
the purchase and operation of an electricity generating plant. [Adv. D.I. 21 at 2]. The
parties entered into an ICA which sets forth their rights and priorities, with LNV holding
a first-priority security interest in substantially all of the Debtors' assets ("Collateral"),
and a group of Second Lien Creditors (including Solus) holding a junior interest in the
same Collateral. [*Id.*] When the Debtors filed for Chapter 11 bankruptcy protection on
December 6, 2016, it was understood by all parties that the value of the Debtors' assets
was insufficient to fully satisfy LNV's first-priority lien. [Adv. D.I. 25 at 22, ¶¶ 22, 28]. It
was also understood that the collateral agent for LNV and the Second Lien Creditors had
failed to file a continuation statement with respect to the UCC-1 financing statement on
Debtors' personal property, leaving that security interest potentially avoidable. [Adv. D.I.
21, ¶ 38].

The Debtors and LNV subsequently settled with respect to the expired financing
statement and incorporated that settlement into the Debtors' Plan of Reorganization. *In
re La Paloma Generating Company*, 595 B.R. 466, 469-70 (Bankr. D. Del. 2018). The settlement

---

[3] The Court is very familiar with the underlying facts of this case having already decided
the respective rights of LNV and Solus in connection with competing motion to enforce the ICA.
*In re La Paloma Generating Company*, 595 B.R. 466 (Bankr. D. Del. 2018).  That decision was
subsequently affirmed by the District Court. *In re La Paloma Generating Company LLC*, 609 B.R. 80
(D. Del. 2019). Readers should refer to this Court's and the District Court's prior rulings for a
complete recitation of the facts.

included funds designated for unsecured creditors and set aside the portion of those funds that the Second Lien Creditors could potentially be entitled to (the "Disputed Funds") pending the results of a further hearing on the competing motions to enforce the ICA filed by LNV and the Second Lien Creditors. *Id.* at 470. After full briefing and oral argument on those motions, the Court held that the ICA was unambiguous and entitled LNV to receive all of the Disputed Funds, a decision that was affirmed by the District Court. *Id.* at 477, *aff'd sub nom. In re La Paloma Generating Company LLC,* 609 B.R. 80 (D. Del. 2019).

On February 28, 2019, LNV filed the initial complaint in this adversary proceeding to further enforce the terms of the ICA [Adv. D.I. 1], listing the Ad Hoc Group of Second Lien Creditors as the sole defendant. [Adv. D.I. 21, ¶ 10]. LNV alleged that the Ad Hoc Group took several actions during the Debtors' case that LNV asserts were contrary to the terms of the ICA. [*Id.* at ¶ 40]. On June 6, 2019, the Ad Hoc Group, with the exception of Solus, ("Settling Group Members") settled with LNV and agreed to withdraw from the Ad Hoc Group. [*Id.* at ¶¶ 10, 11]. LNV agreed to file an amended complaint that did not name the Settling Group Members. [*Id.* at ¶ 11]. Solus filed its Answer and Counterclaim, generally denying that it did anything improper [Adv. D.I. 25 at 8, ¶ 40] and asserting a counterclaim for Breach of the Covenant of Good Faith and Fair Dealing as to LNV's actions during the bankruptcy proceedings. [*Id.* at 27, ¶¶ 52-60]. LNV filed this Motion on September 13, 2019. [Adv. D.I. 27]. The Court heard oral argument on the Motion on October 15, 2019 and took the matter under advisement.

4

**DISCUSSION**

Solus's Counterclaim asserts that LNV breached the covenant of good faith and fair dealing by depriving Solus of the benefit of its bargain and forcing it to incur unnecessary legal costs. [Adv. D.I. 25 at 27, ¶¶ 56-59]. The actions specified by Solus include: (1) refusing to include the Second Lien Lenders in negotiations between LNV and the Debtors in regards to the potentially avoidable liens; (2) intentionally impeding the Second Lien Creditors' rights as unsecured creditors; and (3) "using its status as the senior secured lender to coerce the Debtors into agreeing to a settlement that was designed to trample on the Second Lien Lenders' rights under the Intercreditor Agreement." [*Id.* at ¶¶ 36, 46, 47]. Essentially, Solus alleges that the Second Lien Creditors were denied recovery of a portion of the Disputed Funds as unsecured creditors. [*Id.* at 46]. At oral argument, Solus explained that per the ICA, LNV "gets to be in charge of the collateral with a capital C as it's defined under that agreement[,]" [Adv. D.I. 47 (Tr. of Oral Arg.), at 16, ¶¶ 13-15] but asserts that LNV's actions that defined Collateral violated its rights. [*Id.* at 19-20, ¶¶ 25, 1-7].

Solus agrees that the ICA is a valid and binding contract. [Adv. D.I. 25 at 27, ¶ 53]. The ICA specifically allows LNV to: "enforce rights, exercise remedies (including set-off and the right to credit bid their debt) and make determinations regarding the release, disposition, or restrictions with respect to the Collateral without  any consultation with or the consent of the [Second Lien Lenders] . . . all in such order and in such manner as they may determine in the exercise of their sole discretion." [Adv. D.I. 23 (ICA), § 3.1(a)(i)]. In this Court's prior decision granting the Motion of LNV Corporation to

Enforce the Intercreditor Agreement, it found the Disputed Funds to be Collateral that must be turned over to LNV and found that LNV's actions were permitted under the ICA. *La Paloma*, 595 B.R. at 472-77, *aff'd sub nom. In re La Paloma Generating Company LLC,* 609 B.R. 80 (D. Del. 2019). Those findings are law of the case, and therefore binding. *See In re Vaso Active Pharmaceuticals, Inc.*, 500 B.R. 384, 398-99 (Bankr. D. Del. 2013). As the Court previously ruled, LNV can proceed against Collateral however it sees fit, including settling the issue of the lapsed financing statement. *La Paloma*, 595 B.R. at 471-72.

When acting against the Collateral, LNV was exercising its contractual rights. A party cannot breach the duty of good faith and fair dealing by merely exercising its contractual rights. *Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc.*, 723 F.Supp. 976, 991 (S.D.N.Y. 1989). Further, Solus cannot be deprived of contractual benefits that it is not entitled to receive. Pursuant to the ICA, even if the Second Lien Creditors had recovered funds via an unsecured claim against the Collateral, they would have had to pay the funds to LNV. *La Paloma*, 595 B.R. at 475-76. Read in its entirety, the intention behind the ICA was that the Second Lien Creditors were not entitled to recover from Collateral until LNV's obligation was satisfied in full. *La Paloma,* 609 B.R. at 100. Solus's counterclaim, therefore, is barred by the law of the case doctrine.

The law of the case doctrine "bars the re-litigation 'of matters once decided during the course of a continuing lawsuit.'" *In re Radnor Holdings Corporation*, 564 B.R. 467, 482 (Bankr. D. Del. 2017) (citing *Casey v. Planned Parenthood*, 14 F.3d 848, 856 (3d Cir. 1994)). The doctrine applies to "'subsequent rulings by the same judge in the same case or a closely related one [and] to rulings by different judges at the same level.'" *Id.* The doctrine

applies to factual findings made in a main bankruptcy proceeding and is binding on parties to a subsequent adversary proceeding. *Id*.

Solus argues that the law of the case doctrine does not apply to its counterclaim because even though the Court's previous decision was affirmed by the District Court, that decision is still on appeal to the Third Circuit. The Court disagrees. An appeal of a Court's prior ruling does not render the law of the case doctrine inapplicable. *See Vaso*, 500 B. R. at 399. Solus has not cited any new facts or law that would render the Court's prior ruling on the Motion to Enforce the Intercreditor Agreement "clearly erroneous" so as to render the law of the case doctrine inapplicable. Indeed, the affirmance of the Court's prior ruling by the District Court makes the previous factual findings binding on this Court in this adversary. *U.S. v. Local 560* (I.B.T.), 974 F.2d 315, 329 (3d Cir. 1992).

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' Counterclaim is dismissed with prejudice. The Court will enter an order giving effect to this ruling.

Dated:  January 13, 2020

JOHN T. DORSEY, U.S.B.J.